*E-filed:* 10/19/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MYRA C. CRENSHAW, | No. C-05-02387 RMW |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| SUN MICROSYSTEMS, INC., | |
| Defendant. | |

This case was tried before the court on April 2, 3, 4, 5 and 12, 2007. Plaintiff Myra Crenshaw represented herself and defendant Sun Microsystems, Inc. was represented by Danielle Ochs Tillotson and Madelyn Jordan-Davis of Foster and Associates. The trial involved plaintiff's claim for disability discrimination. The court previously dismissed all claims other than the one for disability discrimination and narrowed the issues through *in limine* motions. Plaintiff proceeded with trial on the claims that were in her charge of discrimination filed with the EEOC, specifically

that she was discriminated against based upon her disability on May 10, 1996 when Sun allegedly failed, as a result of her disability, to hire her as a Customer Training Instructor or Customer Training Specialist and terminated her employment. The court now issues its Findings of Fact and Conclusions of Law.[1]

## Findings of Fact

1. On June 18, 1992, Myra Crenshaw accepted a position with Sun Microsystems, Inc. as a Technical Support Engineer 2 ("TSE2") in the Market Development Group reporting to Dale Yoakum. Her start date was July 20, 1992.

2. The TSE2 position involved providing technical support for trade shows and demonstrations, which necessitated some lifting and moving activity.

3. The TSE2 position was a low level exempt position at grade level E-05, which paid approximately $44,000 annually.

4. In August of 1993, Crenshaw received an "M" rating on her performance evaluation which reflected that she was meeting some of the requirements of her position but that one or more key areas of her job performance required improvement. In August of 1994, she again received an "M" rating. The evaluation described some positive aspects of Crenshaw's performance but noted that she needed to improve, among other things, her decisiveness, leadership and timeliness. The

---

[1] The court did not announce its rulings on the admissibility of certain of the exhibits offered by plaintiff at trial. Plaintiff marked on occasion more than one exhibit with the same number. The court sustains or overrules the defendants' objections as follows:

| | |
|---|---|
| Exhibit 29: | objection sustained - hearsay |
| Exhibit 30: | objection sustained - lack of foundation, irrelevant |
| Exhibit 31: | overruled (December 22, 2003 letter from EEOC Regional Attorney) |
| Exhibit 31: | objection sustained - hearsay (declaration of McFadden) |
| Exhibit 32: | objection overruled (March 5, 2004 letter from EEOC) |
| Exhibit 32: | objection overruled (Spine Care report dated December 11, 1995) |
| Exhibit 33A: | objection overruled |
| Exhibit 33B: | objection overruled |
| Exhibit 34: | no objection |
| Exhibit 35-38: | objection sustained - lack of foundation, irrelevant |
| Exhibit 39: | objection sustained - hearsay |
| Exhibits 40-43: | objection overruled |
| Exhibit 44: | objection overruled |
| Exhibit 45: | objection sustained - irrelevant |

report also noted her physical difficulties.

5. On May 27, 1993, Crenshaw reported to her employer that she had experienced a strain in her lower back. She filed for workers' compensation and was out on temporary disability through June 29, 1993. She returned to work with a lifting restriction of 20 pounds through September 1993.

6. In June of 1994, Crenshaw experienced additional back problems and again went out on leave. The evidence is unclear as to the exact length of time she was out but when she returned her supervisor, Dale Yoakum, shifted her to an assignment to minimize any lifting.

7. Crenshaw continued to experience difficulty with her back so Yoakum contacted Jeff Zank, the manager in a related engineering group, and they discussed whether Zank could create a job for Crenshaw that would avoid activities that caused Crenshaw's back difficulties. Zank agreed to do so. Although Zank's group was composed of engineers who had higher jobs grades than Crenshaw and more experience, the transfer of Crenshaw was not a promotion but rather an effort to respond to Crenshaw's stated physical limitations. The new assignment involved no lifting but did require some sitting and standing. Crenshaw maintained the pay grade and title she had when working in Yoakum's group.

8. In October of 1994, Crenshaw again went out on leave. Crenshaw reported that difficulty with her back prevented her from sitting for extended periods of time. She returned briefly in November 1994. A sit/stand work station was installed for Crenshaw based upon medical reports, but this accommodation was apparently not satisfactory. Crenshaw did not believe the station was properly installed. Crenshaw went on leave again for four and a half months until late March 1995. She sought to be placed on long-term disability, but was denied benefits based upon a determination that her back strain and the restrictions it imposed did not constitute a permanent disability. This determination was later changed.

9. After Crenshaw returned to work in March 1995, she informed Zank that she could not tolerate the sit or stand requirements of her previous job with his group and that she had no intention of returning to it. On approximately April 10, 1995, she went back out on unpaid medical leave. After about ninety days her duties were assumed by her co-workers.

10. During her leave, Crenshaw initially sought vocational rehabilitation benefits as part of

her worker's compensation claim. Lee Huff, a vocational rehabilitation counselor to whom Crenshaw was referred by her attorney, initially worked with Crenshaw with the idea of easing Crenshaw back into the workplace with instructor type positions outside Sun which Crenshaw could perform for one to two hours per day. Crenshaw discontinued her vocational rehabilitation in approximately November 1995.

11. In January 1996, Crenshaw informed Sun's HR representative, Catherine Lee, that she had no intention of returning to Sun as a Technical Support Engineer and wanted to apply for training positions. She did apply for a position as a training instructor. At the time, Crenshaw remained a grade E-05. The position she sought, Customer Training Instructor III, was a grade E-08 with a salary of $80,000 and required substantial training experience.

12. Training manager Sue Finnigan interviewed Crenshaw for the training position and reviewed her qualifications and past performance. Finnigan determined, based upon her own interview of Crenshaw and the input of two others who interviewed Crenshaw, that she was not qualified for the position. One of the interviewers advised that he felt Crenshaw had overstated her experience on her resume which said she had worked as a market development engineer since 1994 and provided "in-depth technical support, testing, writing articles and white papers." In fact, Crenshaw had actually worked only a short period of time in Zank's group, had only worked on articles as part of a group and a white paper was only in progress. Finnigan noted that Crenshaw had only received "M" evaluations on her performance reviews and lacked experience, including actual teaching experience.

13. The individuals who were hired for the open customer training positions reasonably appeared to Finnigan to have more experience and better qualifications than Crenshaw, although Crenshaw had more formal education including a degree from Berkeley in electrical engineering and computer science. No evidence suggests that Crenshaw's disability played a role in Finnigan's or Sun's decision that Crenshaw was not qualified, although her time away from work necessarily affected the amount of experience she had accumulated at the time of her application.

14. Sun had a Medical Leave of Absence Policy that allowed a medical leave of absence for up to twelve continuous months. However, it allowed replacement by a regular employee after

1    ninety days.  The policy included Sun's Return to Work Program which promised that "[w]hile Sun
2    cannot guarantee job availability for individuals returning from Medical Leaves of Absence, the
3    Company will make a reasonable effort . . . to help employees find a comparable position within the
4    organization."  The Return to Work Program allowed an employee to return to work for thirty days
5    at her regular rate of pay during which period Sun would assist her in looking for a new position at
6    Sun.  Crenshaw participated in the Return to Work Program but she felt she could only do jobs, such
7    as that of an instructor, which were not comparable to the position she had at Sun prior to her
8    medical leave.  She only made applications for such positions which all had grade levels higher than
9    her grade level and required qualifications that Crenshaw did not appear to meet.  Since she was not
10   hired into an available position within the thirty-day period of the program, Crenshaw's employment
11   was terminated on May 10, 1996.  No evidence was offered indicating that Crenshaw's disability
12   was a motivating factor in any decision on her job applications.

13         15.  After the termination of Crenshaw's employment with Sun, Crenshaw applied for and
14   was granted Social Security Disability Insurance ("SSDI") benefits based on the Social Security
15   Adminstration's ("SSA") determination that Crenshaw was totally disabled for the period of 11/8/94
16   to 1/15/97 and 7/30/97 through the present.  Further the SSA explicitly found that: Crenshaw's
17   impairment was considered "severe;" Crenshaw's impairments prevented her from performing
18   greater than sedentary work; Crenshaw's impairments prevented her from performing past relevant
19   work; and that Crenshaw did not have transferable skills to perform other work within her physical
20   and mental residual functional capacity.

21         16.  Sun paid Crenshaw retroactive SSDI benefits for the periods of disability designated by
22   the SSA's decision.

23         17.  Since the SSA issued its determination, Crenshaw has regularly received total disability-
24   related benefits that equal 70% of her annual income as a TSE2.

25         18.  On February 28, 1997, just under 300 days after her employment was terminated,
26   Crenshaw filed a charge of discrimination with the California Department of Fair Employment &
27   Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") wherein she
28   claimed that Sun terminated her employment because of her disability.

19. In her EEOC complaint, Crenshaw complained that she had not been hired for the Instructor position because of her disability. She also specifically alleged that the first and last date on which she was discriminated against was May 10, 1996, the date of the termination of her employment.

20. On July 11, 2000 the EEOC issued a written Determination in which it found that Crenshaw's employment was terminated in violation of the ADA. The facts on which the EEOC made its determination, as well as its reasoning are not clear. However, the EEOC concluded that Sun's Return to Work program "fails to satisfy the reasonable accommodation requirements of the ADA because of its limitation in duration, its mandatory competition for vacancy requirements, and its obligatory employment termination provisions for unsuccessful participants." It appears that thereafter a Senior Trial Attorney for the EEOC recommended against litigation. The EEOC apparently lost Crenshaw's file, so details of what happened after the recommendation against litigation are unknown except for the fact that the EEOC did not pursue litigation.

**Conclusions of Law**

1. Crenshaw's disability claims are limited in scope by her February 28, 1997 EEOC claim. 42 U.S.C. §12117(A) (filing a timely charge with the EEOC is a prerequisite to brining a civil lawsuit on an ADA claim); *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1176 (9th Cir. 2000) (EEOC claim must be brought 300 days from the date the unlawful act occurred); *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002 ) (each discrete discriminatory act or retaliatory act is a separate unlawful employment practice for purposes of the limitations period).

2. The alleged discriminatory acts that occurred within 300 days before Crenshaw filed her EEOC charge are set forth in her EEOC complaint and assert that on May 10, 1996 Sun, because of her disability, failed to hire her as a Customer Training Instructor or Customer Training Specialist and terminated her employment.

3. Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 (2003). The burden of production then shifts to the employer to respond with a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, the burden shifts back to plaintiff to

establish that the employer's articulated reason was a "pretext" for discrimination and the true reasons for the action were discriminatory. *Id.* Although the burden of production shifts, at all times the plaintiff maintains the burden of proving that the employer intentionally discriminated against her.

4. In order to make out a *prima facie* case of discrimination, plaintiff must produce evidence that (1) she was a disabled person with the meaning of the ADA, (2) she was a qualified individual, meaning that she could perform the essential functions of the job at issue, (3) she suffered an adverse employment action because of her disability. *Kenneth v. Applause, Inc.* 90 F.3d 1477, 1481 (9th Cir. 1986).

5. Crenshaw failed to establish a *prima facie* case of disability discrimination because she did not show that she could perform the essential functions of her job with or without a reasonable accommodation. A "qualified individual" is an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the position. 42 U.S.C. § 12111(8). Crenshaw told Sun (Zank and Lee) that she could not do her previous job with or without an accommodation. She wanted a Customer Training or Customer Specialist position at a higher grade than she was. She was not qualified for such positions based upon her experience and her job performance. Sun was not obligated to place her in a position for which she was not qualified (*see McAlindin v. San Diego*, 192 F.3d 1226, 1238 (9th Cir. 1999)), nor does an employer have the obligation to transfer or promote a disabled worker to a position that requires more skill than the current position occupied by the employee. *McLean v. Runyon*, 222 F.3d 1150, 1152 (9th Cir. 2000); *Gomez v. American Building Maintenance*, 940 F. Supp. 255, 258 (N.D. Cal. 1996).

6. Whether the EEOC's determination that Sun's medical leave policy and Return to Work Program discriminated against employees with disabilities does affect the analysis of Crenshaw's claims. The EEOC appears to have concluded that Sun's failure to keep Crenshaw's job open for her at the conclusion of her medical leave was discriminatory. However, Crenshaw was unable to perform her past job with or without an accommodation after she completed her medical leave. Therefore, even if her job had been protected, she would not have been able to perform the job requirements. No credible evidence showed that she could or was willing to go back to her job with

Findings of Fact and Conclusions of Law
Case No. C-05-02387-RMW

1  Zank's group with or without any type of accommodation.

2  7. Crenshaw's application for SSDI resulted in a determination of total disability from November 8, 1994 to January 15, 1997 and from July 30, 1997 to date. She has also been determined to be totally disabled under Sun's long term disability policy from November 8, 1994 and received payments thereunder retroactive to January, 1995 (she previously received temporary disability payments from November 8, 1994). The SSA found that Crenshaw's impairment was "severe," that her impairments prevented her from performing her past relevant work and that she did not have transferable skills to perform other work within her physical and mental residual functional capacity. Claims for SSDI benefits and for ADA damages, however, do not inherently conflict because the SSA does not consider the possibility of a reasonable accommodation. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999). However, an employee must explain the apparent discrepancy between her statement in pursuing SSDI benefits that she was totally disabled and her ADA claim that she could perform essential functions of her job. *Id*. at 806. Here, Crenshaw has not offered a satisfactory explanation, particularly given that she has not borne her burden of showing that she could perform her duties in Zank's group with or without a reasonable accommodation.[2]

8. Since Crenshaw has not shown that she was a qualified individual with a disability at the time she failed to obtain the instructor or training specialist positions, she has not shown that Sun discriminated against her by not hiring her as an instructor or training specialist. Further, Sun did not wrongfully terminate her employment in violation of the ADA because she could not perform her previous position with or without an accommodation. Crenshaw is not entitled to relief on her complaint. Judgment will be entered in favor of Sun.

DATED:   10/19/07

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

---

[2] Under Ninth Circuit law, plaintiff may not recover both back pay and social security disability benefits for the same period of time based on inconsistent positions. *See Fredenburg v. Contra Costa County Dept. of Health Servs.*, 172 F.3d 1176, 1181 (9th Cir. 1999).

Findings of Fact and Conclusions of Law
Case No. C-05-02387-RMW

**Notice of this document has been sent to:**

**Counsel for Plaintiff(s):**

Myra C. Crenshaw

5014 Hildasue Terrace

Fremont, CA 94555

PRO SE

**Counsel for Defendant(s):**

Michael W. Foster        mfoster@fosterlaborlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      10/19/07                                              TSF

                                                          **Chambers of Judge Whyte**